# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOREEN CHAVIS,<br>425 60th St., NE, Apt. 1<br>Washington, DC 20019,<br><br>*Plaintiff*,<br><br>v.<br><br>TYRONE GARRETT, in his official capacity as Executive Director of the DISTRICT OF COLUMBIA HOUSING AUTHORITY,<br>1133 North Capitol St. NE<br>Washington, D.C. 20002<br><br>and<br><br>DISTRICT OF COLUMBIA HOUSING AUTHORITY, 1133 North Capitol St. NE<br>Washington, D.C. 20002,<br><br>*Defendants.* | Civil Action No. _____ |

## COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Loreen Chavis, a survivor of domestic violence and participant in the District of Columbia's Housing Choice Voucher Program, seeks declaratory and injunctive relief, damages, costs, and reasonable attorneys' fees, for harms flowing from the D.C. Housing Authority's unlawful termination of her housing assistance and unlawful denial of her related request for a hearing concerning her entitlement to, and the amount of, that assistance. These actions by the Housing Authority violate Ms. Chavis's rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution; the Violence Against Women Reauthorization Act of 2013,

34 U.S.C. § 12291 *et seq.*, and regulations promulgated thereunder at 24 C.F.R. parts 5 and 982; and Title 14 of the D.C. Municipal Regulations.  As a result of these violations, Ms. Chavis and her family have not been able to pay her rent since January 2019 and are imminently at risk of eviction.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331, which provides that the district courts have jurisdiction over all civil actions arising under the laws of the United States.  In this case, the Court has jurisdiction under section 1331 to provide remedies under 42 U.S.C. § 1983, for deprivation of federal rights by Defendants under color of the laws of the District of Columbia.

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Count III of this Complaint, which claims deprivation of rights under D.C. law, because that Count arises from the same case or controversy, and shares a common nucleus of operative facts, as Plaintiff's claims for violations of federal law under 42 U.S.C. § 1983.

## PARTIES

3. Plaintiff Loreen Chavis is a resident of the District of Columbia who currently resides with two children at 425 60th Street, NE Apartment 1, Washington, DC 20019.  Since on or about December 2017, Ms. Chavis has been a participant in the D.C. Housing Choice Voucher Program through which the D.C. Housing Authority has paid a portion of the rent for her household.

4. Defendant Tyrone Garrett is sued in his official capacity as Executive Director of the Defendant D.C. Housing Authority ("Housing Authority").  The Housing Authority is a federally-funded public housing authority organized pursuant to D.C. enabling legislation, D.C. Code §§ 6-201 *et seq.*, for the purpose of providing decent, safe, and sanitary low-cost housing to moderate and lower income families and individuals.  The Housing Authority administers the local portion of the federal

Section 8 Housing Choice Voucher Program ("HCVP"), codified at 42 U.S.C. § 1437f(o). The Housing Authority is a "corporate body" with "legal existence separate from the District government." D.C. Code § 6-202(a). The Defendants are "persons" within the meaning of 42 U.S.C. § 1983. At all relevant times, Defendants have acted under a continuing policy or practice that constitutes action under color of D.C. law within the meaning of 42 U.S.C. § 1983.

## STATUTORY AND REGULATORY FRAMEWORK

**The Housing Choice Voucher Program and the Violence Against Women Act**

5. Congress created the HCVP under the Housing and Urban-Rural Recovery Act of 1983. The HCVP, enacted as Section 8 of the United States Housing Act of 1937, is codified at 42 U.S.C. § 1437f(o). The United States Department of Housing and Urban Development ("HUD") has promulgated regulations implementing the program at 24 C.F.R. Part 982. The HCVP, commonly known as "Section 8," is one of several rent subsidy programs aiding lower income families.

6. The purpose of rent subsidy programs, including the HCVP, is to aid "low-income families in obtaining a decent place to live and of promoting economically mixed housing . . . ." 42 U.S.C. § 1437f(a). The HCVP is designed and intended to assist low-income families, such as Ms. Chavis's family, by providing rent subsidies that enable them to rent units in the private rental housing market.

7. The federal government, through HUD, allocates funds to local public housing agencies to administer the HCVP. Under the regulations, the local public housing agency enters into a Housing Assistance Payments ("HAP") contract with a property owner on behalf of an eligible family and agrees to subsidize the rental payment in an amount based on the family's income. 24 C.F.R. § 982.451. The subsidized rent payments are often referred to as HAP payments.

8. HCVP participants are required to pay approximately thirty percent of their household income toward the rent each month. 42 U.S.C. § 1437f(o)(2)(A). This payment is often referred to as the Total Tenant Payment.

9. Under the HCVP, the "participant" is the family that has been admitted to the program and is currently assisted in the program. A "family" is a person or group of persons. 24 C.F.R. § 982.4(b).

10. Congress enacted the Violence Against Women Act ("VAWA") to provide certain protections for women, such as Ms. Chavis, who become victims of domestic violence. The VAWA is codified at 34 U.S.C. § 12291 *et seq*.

11. VAWA establishes an enforceable statutory right for tenants receiving assistance under covered housing programs, prohibiting denial or termination of assistance to such tenants on the basis that they have been a victim of domestic violence. 34 U.S.C. § 12491(b)(1). The statute requires that a tenant receiving assistance under the HCVP may not be denied assistance or terminated "on the basis that the . . . tenant is or has been a victim of domestic violence . . . if the . . . tenant otherwise qualifies for . . . assistance." *Id.*

12. Under VAWA, the term "covered housing program" means, among others, the program under section 8 of the United States Housing Act of 1937. 34 U.S.C. § 12491(a)(3).

13. HUD regulations implementing this individualized statutory right expressly require that if an assisted family breaks up because of "an occurrence of domestic violence", the local housing authority "must ensure that the victim retains assistance." 24 C.F.R. § 982.315(a)(2).

### District of Columbia Housing Act of 1999 and District of Columbia Municipal Regulations Title 14

14. The D.C. Housing Authority Administrative Plan, set forth in chapters 49 through 59 of Title 14 of the D.C. Municipal Regulations, governs how the Housing Authority shall

implement the requirements found in the applicable federal laws, regulations, and notices, as well as the requirements of the D.C. Code, regarding the HCVP.

15. D.C. regulations parallel federal law by providing that if the family breaks up due to domestic violence or intrafamily offenses, the "victim of the violence or offense shall continue to receive assistance." 14 D.C.M.R. § 5317.6(b)(1). Specific procedures apply when a family receiving assistance under the HCVP breaks up into two different families, such as in cases of divorce or domestic violence. 14 D.C.M.R. § 5317.6.

16. A victim may submit documentation of domestic violence to the Housing Authority by providing any of the following: a) HUD-approved certification forms; b) records from law enforcement, court or administrative agencies; or c) documentation signed by the victim and a provider from whom the victim sought assistance in the situation who attests under penalty of perjury that he or she believes that the incident(s) of domestic violence constitute(s) grounds for VAWA protection. 14 D.C.M.R. §§ 4907.12 and 5317.6(c).

17. If the Housing Authority receives documentation that the head of household committed domestic violence against a member of the household, and seeks to remove the head of household from the assisted family, DCHA is required to undertake a specific process to determine who will retain assistance. 14 D.C.M.R. § 5317.6(c) and (d). Prior to making a determination, the Housing Authority must notify both individuals that only one person shall retain assistance, how the Housing Authority will make the decision, and what information the individuals can provide. 14 D.C.M.R. § 5317.6(c)(1)-(2). After making its determination, the Housing Authority must notify both individuals in writing of its decision and the basis for its decision. 14 D.C.M.R. § 5317.6(c)(3). The person who does not "continue to receive assistance" is entitled to challenge that determination at an informal hearing. 14 D.C.M.R. § 5317.6(c)(4).

18. In addition to establishing the notice and informal hearing rights set forth above, the D.C. Municipal Regulations separately provide that when the Housing Authority takes adverse action against participants — which includes decisions terminating assistance — participants affected by that adverse action are entitled to notice and an informal hearing to challenge the adverse action. *See* 14 D.C.M.R. § 8902.1. This requirement derives from the due process requirements addressed in *Goldberg v. Kelly*, 397 U.S. 254 (1970), which entitle an individual to notice and an opportunity to be heard before housing benefits, which are constitutionally-protected property interests, may be terminated or otherwise adversely affected.

19. The D.C. Municipal Regulations regarding informal hearing procedures for the HCVP define a "participant [family]" as "a family that has been admitted to the PHA [Public Housing Agency] program and is currently assisted in the program." 14 D.C.M.R. § 8999. A family is defined as "a person or group of persons, as determined by the PHA, approved to reside in a unit with assistance under the program." 14 D.C.M.R. § 8999.

20. When a participant receives notice of an adverse action that the Housing Authority proposes to take, the participant should also be notified of the time frame in which to request an informal hearing to contest the proposed action. 14 D.C.M.R. § 8902.3.

21. If an adversely affected participant timely requests an informal hearing, a hearing officer designated by the Housing Authority conducts the informal hearing, at which both the participant and the Housing Authority have the opportunity to present evidence and arguments. 14 D.C.M.R. § 8904.1 *et seq.* Following the hearing, the hearing officer issues a written proposed decision. 14 D.C.M.R. § 8905.1.

22. If either party disagrees with the hearing officer's decision, it may appeal to the Executive Director of the Housing Authority. In that event, "the Executive Director will render a final written decision within fifteen (15) days of receipt of the request." 14 D.C.M.R. § 8905.4.

## FACTS

### Family and Domestic Violence Background

23. Plaintiff Loreen Chavis married her ex-husband, Roger Avent, on February 15, 2000. Ms. Chavis and Mr. Avent have three children, ages 14, 18, and 21. Ms. Chavis went by the name Loreen Avent from the time of her marriage until she changed her last name to Chavis at the time of her divorce in February 2019.

24. On or about December 1, 2017, Ms. Chavis and Mr. Avent received an enhanced HCVP voucher due to the closing of the Sursum Corda public housing property.

25. Mr. Avent went to the Housing Authority without Ms. Chavis's knowledge and listed himself as the "head of household" on the voucher.

26. While Ms. Chavis and Mr. Avent lived together, Mr. Avent's income comprised approximately one-third of the total household income, and Ms. Chavis's income comprised the rest. Pursuant to 42 U.S.C. § 1437f(o)(2)(A), the amount of the voucher based upon their joint income was approximately $300, and Mr. Avent and Ms. Chavis were responsible for the remainder of the rent, *i.e.*, the Total Tenant Payment. *See supra* at ¶ 8.

27. On September 2, 2018, Mr. Avent verbally threatened Ms. Chavis's life, in the presence of their two children. Ms. Chavis called the police, filed a police report, and sought and obtained a Civil Protection Order against Mr. Avent.

28. When Ms. Chavis contacted the police, Mr. Avent vacated the household, leaving Ms. Chavis and her children as the tenants.

7

**Proceedings at the Housing Authority**

29. Ms. Chavis was concerned that when her ex-husband vacated the household he would — and she would not — retain the housing subsidy, because Mr. Avent was listed on the HCVP voucher as the head of household. Without the subsidy, she would be unable to pay her rent and subject to eviction from her home.

30. On October 10, 2018, Ms. Chavis, through counsel, contacted the Housing Authority about initiating the family breakup process, which would ensure that she would continue to receive assistance due to the domestic violence.

31. On October 26, 2018, Ms. Chavis and counsel went to the Housing Authority and met with three Housing Authority officials, providing them with copies of the Civil Protection Order. Ms. Chavis also provided to them a letter that she had obtained from D.C. Survivors and Advocates for Empowerment attesting that she was the victim of domestic violence and had sought services.

32. The Housing Authority acknowledged receipt of the documents and notified Ms. Chavis and counsel that it would be in touch. Counsel received no further communication from the Housing Authority despite reaching out several times over the following weeks.

33. On November 29, 2018, Ms. Chavis, through counsel, sent another letter to the Housing Authority, requesting confirmation that Ms. Chavis would continue to receive assistance. She received no response to this letter.

34. Unrelated to these events, also on November 29, 2018, the Housing Authority issued a Notice of Final Rule Making — Violence Against Woman Act, which promulgated new regulations governing the family breakup process in cases of domestic violence, detailing and further clarifying the process for removing the head of household.

35. On December 13, 2018, Ms. Chavis, through counsel, sent yet another letter to the Housing Authority, requesting it to comply with the new rules and regulations issued on November 29, 2018. Specifically, Ms. Chavis reiterated her request for confirmation that she would continue to receive assistance, pursuant to the regulations. Ms. Chavis's letter requested a response by December 19, 2018. Ms. Chavis received no response to this letter.

36. On December 21, 2018, Ms. Chavis, through counsel, sent a letter to Watson Fennell, Director of the Office of Fair Hearings at the Housing Authority. In her letter, Ms. Chavis requested informal resolution or an informal hearing regarding the Housing Authority's failure to take action on her request for a family breakup due to domestic violence.

37. On December 26, 2018, an official at the Housing Authority informed Ms. Chavis that the Housing Authority decided to temporarily issue her a voucher. The Housing Authority's stated basis for issuing the temporary voucher was the Housing Authority's determination that Ms. Chavis "meets the VAWA definition" (i.e., the VAWA definition of a victim of domestic violence).

38. In issuing the temporary voucher, the Housing Authority specified that it could be revoked depending upon the outcome of a future hearing (on entitlement to the voucher) that Mr. Avent had a right to request once he received notice from the Housing Authority. The Housing Authority also specified that, because Ms. Chavis only had a temporary voucher, it would not process documentation from her and either her current or potential future landlord to initiate voucher payments to the landlord (commonly referred to as a "lease-up").

39. In response to follow-up communications from Ms. Chavis's counsel, the Housing Authority also made clear that it would not process a recertification for Ms. Chavis as "temporary

9

head of household" to remove Mr. Avent's income from the purposes of calculating of the Total Tenant Payment.

40. The temporary voucher is a materially insufficient subsidy for Ms. Chavis. The amount of the subsidy under the temporary voucher remains based Mr. Avent's and Ms. Chavis's joint income. But after Mr. Avent vacated the household, his income was unavailable to Ms. Chavis, leaving her unable to pay the tenant portion of the rent in full.

41. Following the family breakup, the Housing Authority should have processed an immediate recertification to calculate the Total Tenant Payment based solely on Ms. Chavis's limited income, thereby increasing the Housing Authority's subsidized rent payments to Ms. Chavis's landlord.

42. The Housing Authority's decision to reject the request for recertification left Ms. Chavis in the position of being unable to pay her rent fully and therefore subjects her and her children to likely eviction.

43. On January 9, 2019, Ms. Chavis specifically requested a hearing with the Housing Authority, because the temporary voucher and denial of the requested recertification deprived Ms. Chavis, a victim of domestic violence, of her right to continued rental assistance, leaving her at risk of eviction due to nonpayment of rent.

44. On January 11, 2019, the Housing Authority's Fair Hearings Administrator issued a letter denying Ms. Chavis's request for a hearing. The letter, in relevant part, stated as follows:

> [Y]our request for an informal hearing . . . [is denied because] . . . it has been determined according to our records that your client (Loren Avent) is not the head-of-household and therefore, not entitled to an administrative review.
>
> The regulations governing the grievance process specifies that the head-of-household serves as the basis for income eligibility and rent determination as well as assumes legal responsibility for the household. For that reason, your client does not have standing to

10

> initiate the Housing Choice Voucher Program Informal Hearing Procedures under 14 DCMR § 8999.
>
> While I am sympathetic to your client's circumstances, the administrative grievance process does not entitle individual members of a household composition to request a hearing except, the head of household. Although an administrative review cannot be granted through DCHA's grievance process, this decision does not affect your client's rights to due process through the judicial system.

45. On information and belief, the Fair Hearings Administrator's letter stated a continuing policy or practice of the Housing Authority to deny hearings (concerning eligibility to, and the amount of the subsidy under, Section 8 vouchers) to all victims of domestic violence who are not listed on vouchers as the head of household prior to a family breakup.

46. The Housing Authority has since denied Ms. Chavis's request that she receive continued assistance and Ms. Chavis's landlord has informed counsel for Ms. Chavis that the Housing Authority has stopped making HAP payments.

47. As a result of the Housing Authority's violation of Ms. Chavis's rights to continued assistance, Ms. Chavis suffers an imminent risk of irreparable harm through eviction from her housing. *See Akassy v. William Penn Apts., L.P.,* 891 A.2d 291, 309 (DCCA 2006) (explaining that the upheaval of a tenant from her home, even if she can find alternative housing results in a "cognizable irreparable injury.")

## CLAIMS FOR RELIEF

### COUNT I

**Violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution**

48. Ms. Chavis realleges and incorporates by reference the allegations in Paragraphs 1 through 47 of this Complaint.

49. Ms. Chavis meets the statutory and regulatory criteria entitling to her to housing subsidies, in the amount established by federal law, under the HCVP.

50. Ms. Chavis's rights to continued assistance under the HCVP are property rights within the meaning of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

51. The Due Process Clause requires that the Housing Authority must provide Ms. Chavis with notice and an opportunity for a hearing in front of a neutral decision-maker before the Housing Authority may deprive her of HCVP housing subsidies, including by terminating or diminishing her rights to those subsidies.

52. Defendants are persons acting under color of D.C. law, within the meaning of 42 U.S.C. § 1983, in their administration of the HCVP.

53. Defendants have violated Ms. Chavis's Due Process rights by refusing to provide her with notice and an opportunity for a hearing in front of a neutral decision-maker, before converting her subsidy from a permanent to a temporary one and then ceasing to make HAP payments to Ms. Chavis's landlord, thereby diminishing and then terminating her property rights in the housing subsidies described above.

54. Defendants have violated Ms. Chavis's Due Process rights by refusing to provide her with notice and an opportunity for a hearing in front of a neutral decision-maker, before denying her the opportunity to engage in a recertification process, under which federal law would have required the Housing Authority to increase Ms. Chavis's subsidy to an amount based on her current family income and composition (42 U.S.C. § 1437f(o)(2)). In so doing, Defendants have terminated or diminished her property rights in the housing subsidies described above, by refusing to recalculate the subsidies in the higher amount required by federal law.

55. 42 U.S.C. § 1983 empowers this Court to provide equitable and legal remedies for the Housing Authority's violation of Ms. Chavis's Due Process rights as described above.

56. As a result of the Housing Authority's actions, Ms. Chavis has suffered substantial harm, including but not limited to inability to pay her rent and late fees accrued on her account, and she suffers the imminent threat of irreparable harm through eviction.

## COUNT II

### Violation of the Violence Against Women Act, 34 U.S.C. § 12491(b)(1)

57. Ms. Chavis realleges and incorporates by reference the allegations in Paragraphs 1 through 47 of this Complaint.

58. Defendants are persons acting under color of D.C. law, within the meaning of 42 U.S.C. § 1983, in their administration of the HCVP.

59. Ms. Chavis is a victim of domestic violence within the meaning of the Violence Against Women Act and its implementing regulations. 34 U.S.C. § 12291(a)(8); 24 CFR 5.2003.

60. The Housing Authority violated Ms. Chavis's individually enforceable rights under 34 U.S.C. § 12491(b)(1) and the HUD implementing regulations 24 C.F.R. §§ 5.2005(b)(1) and 982.315(a)(2), to be ensured of continuing assistance under the HCVP as a victim of domestic violence.

61. Ms. Chavis's individually enforceable right to be ensured of continuing assistance includes an entitlement that the assistance will be adequate, in that it must be based upon the income and family-composition standards established by federal law, which are intended to provide tenants a subsidy sufficient to cover their rent. The Housing Authority violated that right by issuing Ms. Chavis a temporary voucher while continuing to calculate her Total Tenant Payment based on the combined income of both her and her ex-husband, such that the subsidy amount is inadequate to cover her rent, without his income. In so doing, the Housing Authority has issued a voucher that also

violates the standards of 42 U.S.C. § 1437f(o)(2), which requires assistance to be calculated based on current family income and composition.

62. Ms. Chavis's individually enforceable right to be ensured of continuing assistance includes an entitlement to have the Housing Authority make an income determination, within a reasonable time, that satisfies the income standards described above. The Housing Authority violated that right by refusing altogether to engage in a recertification process that would lead to an adequate subsidy based upon Ms. Chavis's limited income.

63. This refusal to engage in the recertification process also violated 24 C.F.R. § 982.516(c)(2), which allows a family member to request an interim determination of family income or household composition at any time (based on changes since the last determination) and requires the Housing Authority to make the determination within a reasonable time. The Housing Authority has categorically refused to make an interim determination at any time, thereby refusing to make a determination within a reasonable time.

64. Ms. Chavis's individually enforceable right to be ensured of continuing assistance includes an entitlement to ongoing assistance, so long as she otherwise meets the requirements of the HCVP. Ms. Chavis does meet the requirements of the HCVP. The Housing Authority violated her right to ongoing assistance by issuing Ms. Chavis only a temporary voucher and specifying that it may later be revoked pursuant to a hearing in which she has no right to participate.

65. The Housing Authority further violated Ms. Chavis's rights by terminating the HAP payments to her landlord without providing Ms. Chavis with any notice or opportunity for a hearing.

66. The Housing Authority's actions violated Ms. Chavis's individually enforceable right to be ensured of continuing assistance by denying her any forum in which to vindicate that right.

67. 42 U.S.C. § 1983 empowers this Court to provide equitable and legal remedies for the Housing Authority's violation of Ms. Chavis's rights under the Violence Against Women Act and its implementing regulations, as described above.

68. As a result of the Housing Authority's actions, Ms. Chavis has suffered substantial harm, including but not limited to inability to pay her rent and late fees accrued on her account, and she suffers the imminent threat of irreparable harm through eviction.

## COUNT III

### Violation of Title 14 of the District of Columbia Municipal Regulations

69. Ms. Chavis realleges and incorporates by reference the allegations in Paragraphs 1 through 47 of this Complaint.

70. The District of Columbia Housing Authority Act of 1999 established the Housing Authority, which administers the HCVP. D.C. Code § 6-202.

71. The Housing Authority Board of Commissioners promulgated regulations implementing provisions of the D.C. Housing Authority Act of 1999. 14 D.C.M.R. § 14-100 et seq.; 49 D.C.R. 7192 (July 26, 2002).

72. Ms. Chavis is a victim of domestic violence within the meaning of the D.C. Municipal Regulations. 14 D.C.M.R. § 5999.1

73. The Housing Authority violated Ms. Chavis's individually enforceable right under 14 D.C.M.R. § 14-5317.6(b)(1) to "continue to receive assistance" when a family breaks up into two families because of domestic violence.

74. Ms. Chavis's individually enforceable right to be ensured of continuing assistance includes an entitlement that the assistance will be adequate, in that it must be based upon the income standards established by D.C. law, which are intended to provide tenants a subsidy sufficient to cover

their rent. The Housing Authority violated that right by issuing her a temporary voucher based the combined income of her and her ex-husband, such that the subsidy amount is inadequate to cover her rent, given her minimal income. In so doing, the Housing Authority issued a voucher that also violates the standards of 42 U.S.C. § 1437f(o)(2), which requires assistance to be calculated based on current family income and composition.

75. Ms. Chavis's individually enforceable right to be ensured of continued assistance includes an entitlement to ongoing assistance. The Housing Authority violated that right by issuing Ms. Chavis only a temporary voucher and specifying that it may later be revoked pursuant to a hearing in which she has no right to participate.

76. The Housing Authority further violated Ms. Chavis's rights by terminating the HAP payments to her landlord without providing any notice or opportunity for a hearing.

77. The Housing Authority's denial of Ms. Chavis's requested hearing violated her individually enforceable right to be ensured of continuing assistance, by denying her any forum in which to vindicate that right.

78. The Housing Authority's denial of Ms. Chavis's requested hearing also violated 14 D.C.M.R. § 8902.1, because she is a "participant" within the meaning of those regulations, and a "participant" has a right to a hearing to challenge any determination that affects eligibility or receipt of assistance, such as the temporary voucher issuance at issue here.

79. As a result of the Housing Authority's actions, Ms. Chavis has suffered substantial harm, including but not limited to inability to pay her rent and late fees accrued on her account, and she suffers the imminent threat of irreparable harm through eviction.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Loreen Chavis respectfully requests that this Court:

A. Issue a preliminary and permanent injunction requiring the Housing Authority to restore Ms. Chavis's permanent participation in the HCVP and to recertify the amount of assistance based on her income, including paying all back payments for the Housing Authority's portion of the rent (currently, on information and belief, $2,874 through March 2019) and late fees to her landlord;

B. Issue preliminary and permanent injunction requiring the Housing Authority to adopt policies and procedures that are consistent with (1) the regulations it issued on November 29, 2018 governing the family breakup process in cases of domestic violence, and detailing the process for removing the head of household; and (2) its obligations under the Violence Against Women Reauthorization Act of 2013, 34 U.S.C. § 12291 *et seq.* and regulations promulgated thereunder at 24 C.F.R. part 5; and 24 C.F.R. part 982;

C. Issue a declaratory judgment declaring that the Housing Authority's actions deprive Plaintiff of property without due process of law within the meaning of the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

D. Issue a declaratory judgment declaring that the Housing Authority's actions providing temporary and inadequate assistance violate Plaintiff's rights under the Violence Against Women Act and related implementing regulations;

E. Issue a declaratory judgment declaring that the Housing Authority's actions providing temporary and inadequate assistance violate Plaintiff's rights under Title 14 of the District of Columbia Municipal Regulations;

F. Award Plaintiff damages, reasonable costs, and attorney's fees; and

G. Grant the Plaintiff such other and further relief as may be just and proper.

 Respectfully submitted,

| /s/ Chinh Q. Le | /s/ Daniel G. Jarcho |
|---|---|
| Chinh Q. Le (D.C. Bar #1007037) | Daniel G. Jarcho (D.C. Bar #391837) |
| Heather Latino (D.C. Bar #1007691) | ALSTON & BIRD LLP |
| Elena Bowers (D.C. Bar #1031068) | 950 F Street, N.W. |
| Stephanie Westman (D.C. Bar #1025290) | Washington, DC 20004 |
| LEGAL AID SOCIETY OF THE | Phone: (202) 239-3300 |
| DISTRICT OF COLUMBIA | Fax: (202) 239-3333 |
| 1331 H Street, N.W., #350 | |
| Washington, DC 20005 | Jahnisa Loadholt (D.C. Bar #1031024) |
| Phone: (202) 661-5979 | ALSTON & BIRD LLP |
| Fax: (202) 727-2132 | 1201 W Peachtree NW |
| | Atlanta, Georgia 30309 |
| | Phone: (404) 881-7000 |
| | Fax: (404) 881-7777 |