**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LOREEN CHAVIS,

      Plaintiff,

   v.

TYRONE GARRETT, in his official capacity
as Executive Director of THE DISTRICT OF
COLUMBIA HOUSING AUTHORITY,

    and

DISTRICT OF COLUMBIA HOUSING
AUTHORITY,

      Defendants.

Civil Action No. 19-708 (CKK)

**MEMORANDUM OPINION**
(December 30, 2019)

Pending before the Court is Defendants Tyrone Garrett and the District of Columbia Housing Authority's Motion to Dismiss, ECF No. 26. Defendants have moved to dismiss various claims in the Amended Complaint, ECF No. 24, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for failure to state a claim. In particular, Defendants contend that Ms. Chavis's claims seeking injunctive and declaratory relief are moot in light of Defendants' post-filing actions. Moreover, Defendants argue that Ms. Chavis has failed to state a claim for a Fifth Amendment due process violation. Ms. Chavis opposes Defendants' Motion, except, in part, to the extent that Defendants seek to dismiss Ms. Chavis's claims against Defendant Tyrone Garrett.

Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court **GRANTS** Defendants' Motion. Insofar as Ms. Chavis's claims seek injunctive or declaratory relief, they are **DISMISSED** due to their mootness. Because Ms. Chavis has failed to state a due process claim, that claim is **DISMISSED**. Lastly, as Ms. Chavis concedes that the suit against Mr. Garrett should be dismissed without prejudice, that suit is **DISMISSED WITHOUT PREJUDICE**.

## I. BACKGROUND

Ms. Chavis married Roger Avent on February 15, 2000 and they have three children together. Am. Compl. ¶ 23. On or about December 1, 2017, Ms. Chavis and Mr. Avent received an enhanced voucher under the Housing and Urban-Rural Recovery Act of 1983 ("HVCP"). *Id.* ¶ 24. Mr. Avent listed himself as the "head of household" on the voucher without Ms. Chavis's knowledge. *Id.* ¶ 25. While they lived together, Mr. Avent's income accounted for one-third of the household income and Ms. Chavis's accounted for the remaining two-thirds. *Id.* ¶ 26.

On September 2, 2018, Ms. Avent verbally threatened Ms. Chavis's life in the presence of their children. *Id.* ¶ 27. Ms. Chavis subsequently contacted the police, filed a police report, and obtained a Civil Protection Order against Mr. Avent. *Id.* Mr. Avent vacated the household while Ms. Chavis and her children remained tenants. *Id.* ¶ 28. In the wake of this event, Ms. Chavis became concerned that she might lose her housing voucher, and become unable to pay her rent, because Mr. Avent was listed as the head of household. *Id.* ¶ 29.

---

[1] The Court's consideration has focused on the following:
- Defs.' Mot. to Dismiss, ECF No. 26;
- Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 27; and
- Defs.' Reply in Supp. of Its Mot. to Dismiss ("Defs.' Reply"), ECF No. 28.

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

A brief primer on the relevant federal and D.C. laws provides context for Ms. Chavis's concerns and actions. Under the federal Violence Against Women Act ("VAWA"), 34 U.S.C. § 12291 *et seq.*, tenants that otherwise qualify for assistance under HVCP may not be denied that assistance on the basis that they are or have been victims of domestic violence, *id.* § 12491(b)(1). The implementing regulations specify that if an assisted family breaks up due to "an occurrence of domestic violence," the local housing authority "must ensure that the victim retains assistance." 24 C.F.R. § 982.315(a)(2). The D.C. Housing Authority Administrative Plan further guarantees that when families break up due to occurrences of domestic violence, the "victim of the violence or offense shall continue to receive assistance." 14 D.C.M.R. § 5317.6(b)(1); *see id.* § 5317.6.

The Administrative Plan also provides specific procedures for when it receives documentation that the head of household committed domestic violence against another member of the household. If the Housing Authority "receives conflicting certification documents of domestic violence" from members of the household alleging that one or more other members was the perpetrator, the Housing Authority undertakes a certain process to determine who will retain assistance. *See id.* § 5317.6(c)(1)–(4). Before it can make any determination, the Housing Authority must notify both individuals that only one part of the family will retain assistance, of the process by which the Housing Authority will make its decision, and of what information the involved persons can provide. *Id.* 5317.6(c)(1)–(2). Once it has made its determination, the Housing Authority must notify both individuals in writing of its decision as well as the basis for its decision. *Id.* § 5317.6(c)(3). The adult family member who will not receive assistance can challenge the decision in an informal hearing. *Id.* § 5317.6(c)(4).

The D.C. Municipal Regulations independently provide that when the Housing Authority takes adverse action against individuals, including decisions terminating assistance under HVCP,

the individuals adversely affected are entitled to notice and can challenge the adverse action in an informal hearing. *Id.* § 8902.1. On November 29, 2018, the Housing Authority issued new regulations that govern the family break-up process in the context of domestic violence and clarifying the process for removing the head of household. Am. Compl. ¶ 34.

So, on October 10, 2018, Ms. Chavis, through counsel, contacted the Housing Authority to initiate the family break-up process. *Id.* ¶ 30. On October 26, 2018, she and her counsel met with three Housing Authority officials. *Id.* ¶ 31. They provided the officials with the copy of the Civil Protection Order and a letter that Ms. Chavis had obtained from D.C. Survivors and Advocates for Empowerment attesting that she was a victim of domestic violence and that she had sought relevant services. *Id.* The Housing Authority said it would be in touch, but it did not contact Ms. Chavis or her counsel for the next month. *Id.* ¶ 32.

On November 29, 2018, Ms. Chavis, through counsel, sent a letter to the Housing Authority to confirm that Ms. Chavis would continue to receive assistance, but she received no response. *Id.* ¶ 33. She sent another letter, through counsel, on December 13, 2018, requesting that the Housing Authority comply with the new regulations issued on November 29, 2018. *Id.* ¶ 35. She requested a response by December 19, 2018 but received none. *Id.* Then, on December 21, 2018, Ms. Chavis, again through counsel, sent a letter to Watson Fennell, who was the Director of the Office of Fair Hearings at the Housing Authority, requesting an informal resolution or hearing regarding the Housing Authority's failure to act on her request. *Id.* ¶ 36.

On December 26, 2018, an official at the Housing Authority informed Ms. Chavis that she was going to be issued a temporary voucher because she met "the VAWA definition." *Id.* ¶ 37. The Housing Authority specified that the voucher could be revoked based on a future hearing that Mr. Avent had a right to request. *Id.* ¶ 38. It also explained that it would not initiate voucher

payments to her landlord due to the voucher's temporary status. *Id.* After Ms. Chavis's counsel communicated further with the Housing Authority, the Housing Authority also stated that it would not begin the recertification process to establish Ms. Chavis as temporary head of household so that Mr. Avent's income could be excluded for the purposes of calculating the assistance that Ms. Chavis received. *Id.* ¶ 39. Ms. Chavis explains that this put her at risk of eviction due to nonpayment of rent. *Id.* ¶¶ 40–43.

Subsequently, on January 9, 2019, Ms. Chavis requested a hearing with the Housing Authority. *Id.* ¶ 43. The Housing Authority's Fair Hearings Administrator issued a letter denying her request for a hearing. *Id.* ¶ 44. The letter included the following:

> [Y]our request for an informal hearing . . . [is denied because] . . . it has been determined according to our records that your client (Loren Avent) is not the head-of-household and therefore, not entitled to an administrative review.
>
> The regulations governing the grievance process specifies that the head-of-household serves as the basis for income eligibility and rent determination as well as assumes legal responsibility for the household. For that reason, your client does not have standing to initiate the Housing Choice Voucher Program Informal Hearing Procedures under 14 DCMR § 8999.
>
> While I am sympathetic to your client's circumstances, the administrative grievance process does not entitle individual members of a household composition to request a hearing except, the head of household. Although an administrative review cannot be granted through DCHA's grievance process, this decision does not affect your client's rights to due process through the judicial system.

*Id.* The Housing Authority soon after denied Ms. Chavis's request that she receive continued assistance and halted sending any payments to Ms. Chavis's landlord. *Id.* ¶ 46. On March 8, 2019, Ms. Chavis's landlord filed a Verified Complaint for Possession of her apartment because she had failed to pay the full rent for January, February, and March 2019. *Id.* ¶¶ 47–48. Ms. Chavis filed the first Complaint in this action on March 13, 2019, along with a Motion for Preliminary Injunction. *Id.* ¶ 50.

After the suit was filed, the Housing Authority paid back rent due to the landlord; the landlord consequently dismissed the action for possession of the apartment. *Id.* ¶ 51. The Housing Authority also issued a voucher to Ms. Chavis. Joint Status Report, ECF No. 19, at 2. The parties continued to dispute the amount that Ms. Chavis would receive going forward, but ultimately, by April 18, 2019, the parties agreed that the Housing Authority "had issued Ms. Chavis a housing voucher in a legally sufficient amount." Am. Compl. ¶ 51; *see also* Joint Status Report, ECF No. 22. Ms. Chavis withdrew her Motion for a Preliminary Injunction. Am. Compl. ¶ 51; Joint Status Report, ECF No. 22.

Ms. Chavis filed an Amended Complaint on May 16, 2019. *See* ECF No. 24. Her Complaint alleges violation of the Fifth Amendment's due process clause (Count I), violation of VAWA (Count II), and violation of Title 14 of the District of Columbia Municipal Regulations (Count III). Am. Compl. at 13–18. She requests several types of relief. First, she requests a permanent injunction requiring the Housing Authority "to maintain Ms. Chavis's permanent participation in the HVCP as required by law and to ensure that the amount of assistance is based on her income as required by law." *Id.* at 18. Second, she seeks a permanent injunction requiring the Housing Authority to adopt policies and procedures consistent with the regulations it issued on November 29, 2018 and its obligations under VAWA and related regulations. *Id.* Third, fourth, and fifth, she requests that the Court issue declaratory judgments declaring that the Housing Authority's actions violated the Fifth Amendment's Due Process clause, VAWA and related implementing regulations, and Title 14 of the District of Columbia Municipal Regulations. *Id.* at 18–19. She also requests compensatory damages for emotional distress and nominal damages for the alleged violations. *Id.* at 19.

## II. LEGAL STANDARDS

Defendants move to dismiss portions of Ms. Chavis's Amended Complaint under both Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

A. Subject Matter Jurisdiction under Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.")

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) ("At the motion to dismiss stage, counseled complaints as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) ("We review here a decision granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint."); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) ("[A] court accepts

as true all of the factual allegations contained in the complaint and may also consider 'undisputed facts evidenced in the record.'" (internal citations omitted) (quoting *Mineta*, 333 F.3d at 198)).

Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. United States Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted) (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)), *aff'd*, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Papasam v. Allain*, 478 U.S. 265, 286 (1986)).

## B. Failure to State a Claim under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks and citations omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. DISCUSSION

Defendants advance two main arguments supporting why many of Ms. Chavis's claims should be dismissed. First, Defendants argue that her claims seeking injunctive and declaratory relief are moot because Defendants have provided her the requested relief. Second, Defendants propose that Ms. Chavis has failed to state a due process claim because she did not avail herself of process available to her under District of Columbia law. Defendants lastly contend that the claims against Mr. Garrett in his official capacity should be dismissed because they mirror the claims brought against the Housing Authority. The Court will consider each argument in turn.

To begin with, Defendants argue that Ms. Chavis's claims, insofar as they seek injunctive and declaratory relief related to her voucher, are moot. Defendants advance that they have issued Ms. Chavis "the precise subsidy voucher she wanted in a 'legally sufficient amount,'" and that as a result, she has received the relief she sought and her claims seeking injunctive relief have been mooted. *See* Defs.' Mot. to Dismiss at 14–15. Moreover, Defendants argue that her claims seeking declaratory relief are also moot, as any declaratory judgment at this stage would be an advisory opinion. *Id.* at 15–17. Lastly, Defendants contend that neither set of claims fall into the exceptions for mootness. *Id.* at 17–21. The Court agrees with Defendants on these points.[2]

### 1. General Mootness Principles

The jurisdiction of federal courts is limited by Article III of the Constitution to the adjudication of actual, ongoing cases or controversies. This limitation "gives rise to the doctrines of standing and mootness." *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003); *see Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011) ("Article III of the Constitution limits the federal courts to adjudication of actual, ongoing controversies."). Pursuant to the mootness doctrine, it "is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition. If events outrun the controversy such that the court can grant no meaningful relief; the case must be dismissed as moot." *People for the Ethical Treatment of Animals, Inc. v. United States Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 95 (D.D.C. 2014) ("*PETA I*") (internal quotation

---

[2] At times, Defendants appear to challenge Ms. Chavis's due process claim under this same reasoning. *See, e.g.*, Def.'s Mot. to Dismiss at 15 (including claim seeking declaratory relief regarding due process rights). However, because the Court finds that Ms. Chavis has failed to plausibly state a due process claim, it does not reach whether her claims requesting injunctive and declaratory relief regarding her due process rights are moot.

marks and citations omitted) (quoting 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533 (3d ed. 2014); *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001)). "A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks omitted) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

Mootness is often described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000) (internal quotation marks omitted) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). "Typically, an end to offending behavior moots a case." *People for the Ethical Treatment of Animals v. United States Dep't of Agric. & Animal & Plant Health Inspection Serv.* ("*PETA II*"), 918 F.3d 151, 157 (D.C. Cir. 2019). Nevertheless, two important exceptions to the mootness doctrine distinguish it from standing. *See id.* Both allow a district court to retain jurisdiction over a dispute if the halt in offending conduct is more of a temporary reprieve than a bona fide resolution of the matter. These are the voluntary cessation and the capable of repetition yet evading review exceptions. Ms. Chavis argues only that Defendants' actions fail to qualify for the first exception. *See* Pl.'s Opp'n at 14–25.

Under the voluntary cessation doctrine, if a defendant chooses to terminate the challenged conduct after a lawsuit is filed, the defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."

*Laidlaw*, 528 U.S. at 190. The voluntary cessation doctrine ensures "that a defendant is not 'free to return to his old ways' after it takes unilateral action that moots a case." *PETA I*, 59 F. Supp. 3d at 96 (citing *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). When the defendant claims that it has terminated the challenged conduct, the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness[.]" *PETA II*, 918 F.3d at 157. This "principle must be read in light of the 'presumption of legitimacy accorded to the Government's official conduct[.]'" *Id.* at 157 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)). The "presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Favish*, 541 U.S. at 174 (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926)).

### 2. The Claims Seeking Injunctive Relief

Defendants argue that the offending behavior has concluded here and that, as a result, her claims for injunctive relief are now moot. Ms. Chavis acknowledges that her landlord has been paid back rent and that the amount of the housing voucher issued to her is correct. *See* Joint Status Report, ECF No. 22 ("Defendants have increased the amount of the subsidy to $997 per month, and Plaintiff agrees that the new subsidy amount is correct under the current facts and applicable legal requirements."); Pl.'s Opp'n at 13 (acknowledging that landlord was paid back rent); *id.* (agreeing that on April 18, 2019, Ms. Chavis was issued "a housing voucher in a legally sufficient amount"). She does not argue that this relief afforded to her is insufficient. Instead, she contends that Defendants have failed to show that the alleged violations will not recur, and that Defendants have failed to eradicate the violations' effects. Defendants have, however, met their heavy burden as to Ms. Chavis's claims seeking injunctive relief.

When the voluntary cessation analysis is at issue, "the court must define the wrong that the defendant is alleged to have inflicted." *Larsen v. U.S. Navy*, 887 F. Supp. 2d 247, 252 (D.D.C. 2012) (internal quotation marks and alterations omitted) (quoting *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990 (en banc))). "The opportunities for manipulation are great. The more broadly [the Court] define[s] the wrongful conduct, the more numerous are the possible examples, and the greater the likelihood of repetition." *Clarke*, 915 F.2d at 703. Ms. Chavis has alleged two relevant wrongs. The Court considers both alleged wrongs and the corresponding relief.

First, she has alleged that her own rights were violated. For this wrong, she requests that this Court issue "a permanent injunction requiring the Housing Authority to maintain Ms. Chavis's permanent participation in the HCVP as required by law and to ensure that the amount of assistance is based on her income as required by law." Am. Compl. at 18 ¶ A. To the extent that Ms. Chavis seeks this relief, her claim is moot. Defendants have demonstrated that the conduct outlined in the Complaint will not reasonably be expected to recur. The sequence of events leading to the alleged violation was unique, and the circumstances underlying those events no longer exist and are extremely unlikely to occur again. For one, Ms. Chavis is head of household and currently in possession of the most permanent voucher that the Housing Authority can provide, and the subsidy is for what both parties acknowledge to be a legally sufficient amount. *See* Pl.'s Opp'n at 13; *see also* Pl.'s Opp'n at 18 n.5 (explaining that Ms. Chavis understands that voucher issued to Ms. Chavis is permanent and not temporary, and that it is subject to other conditions).

Moreover, while Ms. Chavis argues that the series of missteps underlying the Housing Authority's conduct shows that the conduct may reoccur, *see* Pl.'s Opp'n at 16 (citing Am. Compl. ¶¶ 36–46), it actually shows how implausible it is to claim that Ms. Chavis could lose access to her voucher for the same reasons related VAWA protections again. For example, the declaration

submitted by Defendants lists a series of events and communications with both Mr. Avent and Ms. Chavis that are unlikely to arise again, as Ms. Chavis is in possession of a non-temporary voucher, is designated head of household, and is no longer married to Mr. Avent. *See* Decl. of Caleb Raymond, ECF No. 26-2. Defendants even admit that they made errors in handling Ms. Chavis's voucher situation. *See, e.g.*, *id.* ¶ 21 (stating that letter sent to Plaintiff denying her informal hearing was sent in error). It is nearly impossible to imagine that a similar series of events could unfold again.

Accordingly, because she obtained the relief she asked for, because the effects of that relief addressed by her request for injunctive relief have been eradicated, and because it is clear that the alleged behavior will not recur as to her, this claim is moot. *See Isenbarger v. Farmer*, 463 F. Supp. 2d 13, 23 (D.D.C. 2006) (finding that although there had been one violation, and although defendant maintained "that other future events could theoretically affect" plaintiff's rights, there was no "sufficient basis for placing th[e] case within the voluntary cessation exception" when requested relief had been provided).

Ms. Chavis's second alleged wrong hinges on her "continuing policy or practice" theory. In short, Ms. Chavis argues that the alleged events further evidence "a *complete* breakdown in Defendants' processes" and constitute a "continuing policy or practice of DCHA to deny domestic violence victims" not designated as heads of household their "right to continued housing assistance following a family breakup, including their right to a fair hearing." *See* Pl.'s Opp'n at 17 (citing Am. Compl. ¶ 45). Defendants' actions, she claims, have done "nothing to reassure Ms. Chavis or this Court that the systemic breakdowns" will not recur again to her or "similarly situated victims of domestic violence." *Id.* To redress this alleged wrong, she requests that this Court issue:

a permanent injunction requiring the Housing Authority to adopt policies and procedures that are consistent with (1) the regulations it issued on November 29, 2018 governing the family breakup process in cases of domestic violence, and detailing the process for removing the head of household; and (2) its obligations under the Violence Against Women Reauthorization Act of 2013, 34 U.S.C. § 12291 et seq. and regulations promulgated thereunder at 24 C.F.R. part 5; and 24 C.F.R. part 982[.]

Am. Compl. at 18 ¶ B.  It is unclear whether the voluntary cessation doctrine squarely applies under these circumstances, as Ms. Chavis has brought a suit solely on her own behalf; she does not allege to represent a class of similarly situated people.  *See Toor v. Holder*, 717 F. Supp. 2d 100, 106 (D.D.C. 2010) ("The voluntary cessation exception is typically invoked when there is a threat that the defendant will reestablish the challenged and ceased practice *against the plaintiff* after dismissal of the suit.").  Nor does she bring a claim under FOIA.  *See Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 226 (D.D.C. 2017) ("[Plaintiff's pattern and practice] allegation is based on *Payne Enterprises, Inc. v. United States*, a case brought pursuant to the Freedom of Information Act, and therefore of questionable applicability to Plaintiff's claims pursuant to FACA and the APA.").  Regardless, without deciding whether such a claim could be brought in these circumstances, the Court finds that there is no pattern or practice of violations apparent from the record and that Ms. Chavis has failed to plausibly allege that there is such a pattern or practice.

Ms. Chavis bases her argument, in part, on language in the letter sent to her.  In this letter, the Housing Authority's Fair Hearings Administrator stated that "[t]he regulations concerning the grievance process specifies that the head-of-household serves as the basis for income eligibility and rent determination as well as assumes legal responsibility for the household."  Am. Compl. ¶ 44.  According to Ms. Chavis, the "letter stated a continuing policy or practice of the Housing Authority to deny hearings" to "all victims of domestic violence who are not listed on vouchers as the head of household prior to a family breakup."  *Id.* ¶ 45.  She also claims that the series of

actions in her case were not "isolated incidents" but instead evidence of this pattern or practice. Pl.'s Opp'n at 16–17.

These allegations, however, are insufficient to demonstrate a continuing pattern or practice that qualifies for the voluntary cessation exception to mootness. So too does the record lack indicia of a pattern or practice. The Amended Complaint does not include allegations about any other victims of domestic violence who have encountered the same alleged policy as Ms. Chavis did. The events included in the Amended Complaint also only span a few short months; in other words, the violation occurred in a specific and discrete circumstance, and not continually or repeatedly. While Ms. Chavis relies upon the quoted portion of the letter, the actual language in the letter does not address that Ms. Chavis was a victim of domestic violence. Nor does it state that this is the policy specifically applicable to domestic violence victims. *See* Am. Compl. ¶ 44. This letter alone is therefore insufficient to support a plausible claim that there is a continuing pattern or practice here, especially in light of the "general presumption that a federal agency will follow its own regulations," *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011), including the Housing Authority's regulations concerning the family break up process, which Ms. Chavis does not contest align with applicable protections under VAWA and D.C. law.

The cases upon which Ms. Chavis relies do not suggest otherwise. In *Young v. District of Columbia Housing Authority*, 31 F. Supp. 3d 90 (D.D.C. 2014), this Court found that the Housing Authority's actions were insufficient in light of its previous conduct, *id.* at 96–99. At issue in the case was the Housing Authority's provision of American Sign Language ("ASL") interpreters to the plaintiffs in addition to their failing to provide vouchers. *See id.* The Court found that the Complaint set forth "a multi-year history of Defendant repeatedly failing to facilitate effective communication with Plaintiffs despite repeated requests by Plaintiffs for ASL interpreters and

despite assurances from Defendant on several occasions that ASL interpreters would be provided." *Id.* at 96. Only once the suit had begun did the Housing Authority began to remedy the situation, which included not only issuing vouchers to the plaintiffs but also implementing a notification system to notify staff members of needs for ASL interpreters. *See id.* The Court concluded that although the vouchers had already been issued, the notification system could have "easily be[en] undone." *Id.* Because the plaintiffs would continue to have ongoing contact with the Housing Authority, the fact that the notification system could be undone was enough to keep the case from being moot. *See id.* at 96–97.

*Young* is inapposite here. Ms. Chavis has not alleged a multi-year pattern of misbehavior. Instead, she alleged a single series of events that she claims amounted to a violation of her rights. That past series of events, as explained above, will not affect her future contact with the Housing Authority, unlike in *Young*. There is no system here that could be easily undone as to Ms. Chavis that would result in a lack of effective communication, as in *Young*. Nor is there a chance that a violation could inadvertently occur as to Ms. Chavis again, as was the case with the plaintiffs in *Young* in the case of unscheduled visits to the Housing Authority. *See id.* at 98–99. Moreover, this Court in *Young* actually suggested that providing a voucher wrongfully withheld may moot a case that was solely about being denied a voucher. *See id.* at 97 (finding case was not moot "even though DCHA has given Plaintiffs the Vouchers they sought and provided ASL interpreters so that Plaintiffs could access information related to those specific Vouchers"); *id.* at 98 (explaining that complaint included claims not just relating to vouchers, but also to persistent violations regarding effective means of communication).

Ms. Chavis also relies upon *DL v. District of Columbia*, 187 F. Supp. 3d 1 (D.D.C. 2016). *DL* was a case brought under the Individuals with Disabilities Education Act ("IDEA"),

Rehabilitation Act, and other statutes in which numerous plaintiffs alleged that the district had failed to abide by those statutes with respect to their children's education. *Id.* at 4. Like the defendant in *Young*, the District in *DL* had an ongoing responsibility with respect to ensuring that the children were able to receive the appropriate education under the relevant statutes. *See id.* at 11–12. The court in *Young* determined that the District was aware of its behavior and only "changed its conduct during th[e] litigation in an effort to escape liability." *Id.* at 12. In fact, "the District's period of prior non-compliance with the Rehabilitation Act span[ned] over a decade." *Id.* The case itself had been pending for ten years. *Id.* (discussing how District fought liability for "the ten years that these claims have been pending"). These attributes are absent from the present case, in which the alleged violation was with respect to one person—Ms. Chavis—and in which the alleged violation only spanned a few months. The *DL* court even distinguished cases in which there is "a single infraction or isolated occurrence." *Id.* at 13. At bottom, neither *Young* nor *DL* convince this Court that Defendants' conduct has not met their burden here.

Accordingly, as the Court cannot afford Ms. Chavis meaningful relief, this Court finds that certain of Ms. Chavis's claims are moot. These are specifically her claims that seek the relief in Paragraphs A and B of the relief portion of her Complaint. *See* Am. Compl. at 18 ¶¶ A–B; *see also Tidwell*, 239 F. Supp. 3d at 226 (finding insufficient conclusory assertion that future violations would occur when just one violation was in front of court); *PETA I*, 59 F. Supp. 3d at 98 (finding that bare assertions of pattern or practice in complaint were insufficient); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 99 (D.D.C. 2007) (finding that ADA claim was moot when there was single violation and defendant claimed that it had resolved the alleged violation). Her claims are therefore dismissed to the extent that they seek this injunctive relief.

### 3. The Claims Seeking Declaratory Relief

Defendants also challenge Ms. Chavis's related claims seeking declaratory relief regarding the same violations, which are in Paragraphs D and E of the Prayer for Relief Portion of Ms. Chavis's Amended Complaint. Am. Compl. at 18–19 ¶¶ D–E. The Court agrees that these claims are also moot. "[T]he D.C. Circuit has indicated that where a plaintiff seeks both declaratory and injunctive relief pertaining to unlawful agency action, and where the latter has been mooted, an outstanding request for the former will not operate to bar mootness[.]" *Cierco v. Lew*, 190 F. Supp. 3d 16, 27 (D.D.C. 2016), *aff'd on other grounds sub nom. Cierco v. Mnuchin*, 857 F.3d 407 (D.C. Cir. 2017). The D.C. Circuit has found that there are "three potential outcomes to a request for declaratory relief" when "a plaintiff's specific claim is moot." *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994). The first of those three outcomes is the relevant outcome here.[3] As the D.C. Circuit has explained:

> if a plaintiff has made no challenge to some ongoing underlying policy, but merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful, unless the specific claim fits the exception for cases that are "capable of repetition, yet evading review," or falls within the "voluntary cessation" doctrine.

*Id.* at 1429–30 (citations omitted). This is because declaring that an agency's past conduct that has since been rectified was illegal would "accomplish nothing—amounting to exactly the type of advisory opinion Article III prohibits." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008).

---

[3] The second outcome applies when "a plaintiff challenges an ongoing agency policy by seeking declaratory relief, but lacks standing to attack future applications of that policy." *City of Houston*, 24 F.3d at 1429–30. The third outcome applies to pattern and practice claims and related declaratory relief. *See id.* The Court found above that there is no such plausible claim in this case. *See* Section III.A.2. Moreover, Ms. Chavis has not sought any declaratory relief specifically related to the alleged policy or practice. Indeed, Ms. Chavis does not seek forward-seeking declaratory relief here. The only declaratory relief she seeks is in relation to Defendants' past conduct. *See* Am. Compl. at 18 ¶¶ C–E. These two outcomes are therefore inapplicable in this case.

The declaratory relief that Ms. Chavis seeks relates only to the isolated action with respect to her, and not with respect to her broader pattern and practice claim. *See* Am. Compl. at 18–19 ¶¶ D–E. In particular, she asks for "a declaratory judgment declaring that the Housing Authority's actions providing temporary and inadequate assistance have violated Plaintiff's rights under the Violence Against Women Act and related implementing regulations." *Id.* at 18 ¶ D. She also requests "a declaratory judgment declaring that the Housing Authority's actions providing temporary and inadequate assistance have violated Plaintiff's rights under Title 14 of the District of Columbia Municipal Regulations." *Id.* at 19 ¶ E. The Court found that her analogous injunctive relief claims have been mooted and that they do not qualify for the voluntary cessation exception to mootness. *See* Section III.A.2. Accordingly, to the extent her claims seeking the declaratory relief outlined in Paragraphs D and E of her Prayer for Relief, they are similarly moot. These claims are therefore dismissed to the extent that they seek this declaratory relief.

## B. Procedural Due Process Claim (Count I)

Defendants also contend that Ms. Chavis has failed to plausibly state a Fifth Amendment due process claim because she did not avail herself of available process. *See* Def.'s Mot. to Dismiss at 24–25. According to Defendants, Ms. Chavis does not allege that she availed herself of processes available under state law, including the District of Columbia Municipal Regulations ("DCMR") or the District of Columbia Administrative Procedures Act ("DCAPA"). *See id.* at 24. In response, Ms. Chavis argues that 42 U.S.C. § 1983, under which she brings her due process claim, does not require exhaustion of administrative remedies. Pl.'s Opp'n at 25. This response misunderstands Defendants' argument. Rather than arguing that Ms. Chavis failed to exhaust her remedies, they argue that she cannot plausibly state a claim for a violation of her due process rights when she failed to avail herself of the process available to her under District of Columbia law.

The Second Circuit's opinion in *New York State National Organization for Women v. Pataki*, 261 F.3d 156 (2d Cir. 2001), illustrates the difference. In *Pataki*, the Second Circuit found that in conducting its analysis under *Matthews v. Elbridge*, 424 U.S. 319 (1976), the district court had "failed to consider the availability of other procedures that could have prevented" the procedural violation (delay) alleged by the claimants. 261 F.3d at 168. In particular, the Second Circuit highlighted that New York law empowered New York state courts to issue writs of certiorari, mandamus, and prohibition. *Id.* The claimants had failed to use those procedures when the alleged delay became apparent, which could have "substantially reduced, if not eliminated, the risk of prejudice to their claims from further delay." *See id.* The claimants could have even brought a suit under those state laws before prejudice was apparent, unlike with § 1983. *See id.* at 168–69. The Second Circuit found that those procedures were sufficient to afford the claimants due process and that their claim could not succeed because they had failed to avail themselves of available procedural remedies. *Id.* at 169. Moreover, the Second Circuit explained that it was "not contravening the general rule that exhaustion is not required for § 1983 claims." *Id.* Rather, exhaustion was "analytically distinct from the requirement that the harm alleged has occurred." *Id.* (internal quotation marks omitted) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Under prevailing law, "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *Id.* (internal quotation marks omitted) (quoting *Alvin*, 227 F.3d at 116)).

This Court, like other courts in this circuit, finds this reasoning to be persuasive and adopts it here. *See Badgett v. District of Columbia*, 925 F. Supp. 2d 23, 32 (D.D.C. 2013) ("However, where, as here, procedural safeguards exist to obviate prejudice from delay and a plaintiff fails to

take advantage of those measures, no such constitutional violation occurs." (citing *Pataki*, 261 F.3d at 169)); *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 284 (D.D.C. 2007) ("This Court agrees with the reasoning of the Second Circuit. Plaintiff still had avenues of relief open to him in the D.C. Court of Appeals through a writ of mandamus or DCAPA proceeding.").

This Court agrees with Defendants. Because Ms. Chavis has not alleged that she availed herself of available procedures under District of Columbia law, she cannot plausibly state a claim under § 1983 for violation of her due process rights. In her Amended Complaint, Ms. Chavis alleges that she asked for a hearing and was improperly denied one. *See* Am. Compl. ¶¶ 53–61 (outlining Fifth Amendment due process claim). At no point does she allege that she availed herself of relevant procedures available to her under District of Columbia law. There are at least two avenues that she could have accessed. The first is through DCAPA. The District of Columbia Court of Appeals has jurisdiction under DCAPA to hear contested cases arising from the Housing Authority's denial of a voucher, even if no trial-type hearing was ever actually held. *See Mathis v. D.C. Hous. Auth.*, 124 A.3d 1089, 1100 (D.C. 2015). Ms. Chavis therefore could have requested judicial review to "compel agency action unlawfully withheld or unreasonably delayed." D.C. Code § 2-510(a)(2); *see* D.C. Code § 11–722 (granting District of Columbia court of Appeals jurisdiction in accordance with DCAPA). Second, Ms. Chavis could have sought a writ of mandamus under Rule 21 of the Rules of the District of Columbia Court of Appeals. *See* D.C. Court of Appeals Rule 21(a); *Yeager v. Greene*, 502 A.2d 980, 981 n.3 (D.C. 1985) ("[T]he writ of mandamus is technically used as a form to require an official to perform an affirmative[.]"). Ms. Chavis, however, pursued neither of these procedural alternatives, which afforded her sufficient procedural safeguards.

Accordingly, Ms. Chavis's Fifth Amendment due process claim cannot survive Defendants' Motion. *See Badgett*, 925 F. Supp. 2d at 32 ("Plaintiffs failed to avail themselves of either of these procedural safeguards. The Court cannot find the OEA's delay amounted to a violation of Plaintiffs' procedural due process rights where Plaintiffs had at their disposal state procedural remedies to mitigate the prejudice of delay but failed to employ those safeguards."); *Medina*, 517 F. Supp. 2d at 284 ("These procedures afforded plaintiff all the process he was due under the Due Process Clause of the Fifth Amendment of the Constitution. Plaintiff's choice not to pursue these matters in a D.C. court means plaintiff cannot support a claim for a violation of procedural due process."). It is therefore dismissed.

C. Claims Against Mr. Garrett

Lastly, Defendants seek to have dismissed Ms. Chavis's claims against Mr. Garrett on the basis that the suit is against Mr. Garrett in his official capacity and that the suits are identical. *See* Def.'s Mot. to Dismiss at 26; *see also Jefferies v. District of Columbia*, 917 F. Supp. 2d 10, 29 (D.D.C. 2013) (dismissing claims against official in official capacity because it was "redundant" and "inefficient"). Ms. Chavis does not oppose this portion of Defendants' Motion "on the sole ground that such claims are duplicative of the claims against DCHA, and on the specific condition that such dismissal has no effect on the claims asserted against DCHA and is without prejudice." Pl.'s Opp'n at 14 n.4. Accordingly, with Ms. Chavis's consent, this claim is dismissed without prejudice.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss. In particular, the Court **DISMISSES** Ms. Chavis's claims insofar as they seek the injunctive and declaratory relief listed in Paragraphs A, B, D, and E of her Prayer for Relief. The Court further

**DISMISSES** the Fifth Amendment due process claim in Count I of her Complaint, and also

**DISMISSES WITHOUT PREJUDICE** her claims against Mr. Garrett with her consent. As

Defendants have not challenged Ms. Chavis's claims in Count II and Count III to the extent that

they seek nominal or compensatory damages, those claims remain. An appropriate Order

accompanies this Memorandum Opinion.

Date:   December 30, 2019

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge